Case number 16-1289 at L, National Labor Relations Board Petitioner v. Hospital of Barstow, Inc., doing business at Barstow Community Hospital. Ms. Cassata for the petitioner, Ms. Sheedy for the respondent, Ms. Noroo for the intervener. Good morning. May it please the Court, Kaitlin Cassata presenting argument on behalf of Hospital of Barstow, Inc., doing business as Barstow Community Hospital. The hospital appears before this Court today asking that the supplemental decision in order of the National Labor Relations Board, in this case, be vacated or alternatively remanded for two specific separate arguments. First, the Board's supplemental decision in order is not entitled to deference under Chevron. It is violative of the express language of Section 3B of the National Labor Relations Act. It is also not entitled to deference because it is not a reasonable interpretation of the Act and is, in fact, manifestly contrary to the statute. However, even if the Board's interpretation were to survive Chevron and be accorded deference, the Board's factual findings on the merits in this case present separate issues, specifically the Board's findings with regard to the existence of a labor relations agreement, the Board's findings with regard to bad faith bargaining, the Board's findings with regard to the declaration of impasse, and finally, the Board's reward of negotiating expenses. But I'd like to start today by discussing the question of the Board's interpretation of the quorum requirements of Section 3B of the Act. As this Court knows, the case before you today was previously before the D.C. Circuit in 2015 with Judge Srinivasan on that panel. At that time, the case was remanded to the Board because the Board had not provided this Court with an interpretation of the Act to which this Court could apply the question of whether deference should be accorded. The Board has now done that, but it is the position of the hospital that the interpretation provided by the Board cannot withstand the Chevron test at the first step, which is the question of whether there's an explicit problem given the express language of Section 3B of the Act, and second, because the Board's interpretation is not reasonable. With regard to the question of Section 3B of the Act, the Supreme Court has held, and this Court has recognized in many cases, that the Board cannot act when it is without a quorum of Board members, which requires three members. And underlying this case is the factual circumstances that came before the Supreme Court in its Noel Canning decision, because some of the recess appointments made by President Obama were found to be invalid appointments. So at the time when the Regional Director here issued a decision in this case and issued a certification to the Union, the Board was without quorum. And that affects this case because at the time when the Regional Director made those decisions, the Regional Director was acting with the full force and full authority of the Board. And that's made clear by the documents in this case, including the consent election agreement. How do you distinguish this from UC Health? Haven't we already been down this road before about the power of the Regional Director when the quorum is lacking? The distinction between that case and this case, and I believe Judge Srinivasan referred to it, maybe not affectionately as talismanic, but it is in a way talismanic, is the question of finality. In UC Health and SSC Mystic, this Court was very clear that it was incredibly important that a stipulated election agreement of the kind that was at play in those two cases reserved for the Board final determination on behalf of the agency. And what this Court said is because it's not final authority, because a final decision is not being issued on behalf of the Board, but rather any potential objections to the case are being teed up for the Board to review when it regains quorum, it's okay for the region. So that case was all looking to what authority had been delegated from the Board to the Director. And here we have a question of finality that's determined by the parties. That seems to me to be a very different issue. The parties here have decided that this decision is going to be final. And to that extent, it's no different than in a stipulated agreement when a party decides not to appeal to the Board.  It's indistinguishable. In both cases, it's the parties that have decided whether the Regional Director is having the final word or not. Our position is that it is distinguishable. There's a couple reasons why that's the case. The first is that at the time when a Regional Director issues rulings pursuant to a stipulated election agreement, they're not imbued with the full force and authority of the Board as an entire agency. And it is the case that the parties sign and say we'll allow, you know, in a consent election agreement for final authority, or we recognize the final authority. So maybe if there wasn't a quorum problem, there wouldn't be a problem with that. But in a consent election agreement, you're talking about everybody in the room who signs the consent election agreement, the Board and both the parties, knowing that the exercise of authority is the final authority. And I'd also like to address the concept, which is definitely relied heavily upon by the Board, that this is a construction of the parties. The parties contracted and created this agreement by which the Regional Director's authority would be final. That is not borne out by the evidence. It's not borne out by the Board's own procedures. The Board has created an entirely separate class of cases, these consent election agreement cases, where it clearly intended to imbue the Regional Director with more authority in those cases. If the parties agreed, right? Yes. And that's important, but it doesn't mean that the contractual question of whether the parties agreed can supersede the question of whether that's permissible pursuant to the language of the Act. And it's different because at the time when the Regional Director acts, they're acting with final authority. So I guess it seems like the Board could draw a distinction between consent elections, stipulated elections, by saying that in a consent election situation, the decision of the Regional Director is the decision of the Board. And in the stipulated election agreement, the decision of the Regional Director is not the decision of the Board because there's the possibility of an appeal. The Board could do that, I think. Yes, and I think the Board very clearly has. If you look at the consent election agreement, they say this is the decision being issued with the full force and effect of the Board. Does it say with the full force and effect of the Board? Yes. I'd direct you to notes in the appendix. The consent election agreement appears on joint appendix, page 35 is the start. The relevant language is on page 37. And what does it say, page 37? Item 15. All rulings and determinations made by the Regional Director will be final, with the same force and effect in that case as if issued by the Board. Yeah, yeah, I was quibbling with the word full, but it says, yeah, same force and effect. So I guess for our purposes and for your purposes, you'd need to see a distinction between whatever effect that is and the effect of a Board, of a Regional Director decision in a stipulated election agreement where there's no appeal. Right? Right. You'd need to see a distinction between that. And in a stipulated election agreement, the way I read the Board's regulations, 102.67G, the Regional Director's actions are final unless a request for review is granted. And then in the case handling manual it says, if the Board does not grant a request for review, the denial constitutes affirmance of the actions of the Regional Director. And so doesn't that indicate that in a stipulated election in which the Regional Director issued a decision and the Board doesn't grant review, which would subsume a situation in which neither party sought it, the Board is attaching the same degree of finality to the Regional Director's decision in that situation as in a consent election agreement? I think, I know that this was addressed by your decision in UC Health where it was contemplated that if parties did not seek review, the order would become final by dint of the parties not having sought review. And then you are talking about a final decision from the Regional Director, but not at the time when the Regional Director acts on behalf of the agency. I think that's a distinction of significance because when the parties enter into a consent election agreement, whether it's the parties or the Board, the Board makes a lot of that distinction, but I think it's not actually that important. The fact of the matter is the Regional Director is imbued and bestowed, invested with final say in the case. And it's very clear from this Court's precedent and the Supreme Court's precedent that such final authority simply can't be exercised by an agency when the agency doesn't have quorum. And so a reason why that leads to a bizarre result here is if you had a Board, the Board, the full properly constituted Board, and it lacked quorum, it couldn't have done what a Regional Director did in this case. That creates a real problem. But that's true in the stipulated election agreement context too. It is. And we've already said in EZ Health that that's okay. Yes, but again, I would return you to the question of what's the authority exercised at the time it's being exercised. I do think that distinction matters because that's pretty much what the Board, you know, has now tried to disclaim any responsibility for these consent election agreements and said, listen, this is a private contract between the parties, but we didn't create this out of whole cloth. There's plenty of Board regulation. They created this. They had an intent that was different from a stipulated election agreement, and that intent was to end the inquiry with the Regional Director as though the Regional Director were the Board. And that intent is something they're now just looking to dodge because of the unfortunate fact that during a period of no quorum for the Board, the Regional Director shouldn't be exercising that level of authority and power. But so in a stipulated election agreement context, because we still have to draw a distinction in order for you to prevail. Yes. The case hand in the manual says if the Board does not grant a request for review, the denial constitutes a performance of the actions of the Regional Director. Yes. And so would you be saying then if there was at the time that the denial happens, that the Board quorum rule is in effect even though the Regional Director? The Board would have to have quorum to deny the motion for the request for review. And that would be the Board acting on the Regional Director's determination, which means the Regional Director's determination is not final. And then what about a situation in which neither party or nobody seeks an appeal? If nobody seeks an appeal, the Regional Director's determination would become final, as you pointed out in UCHealth by way of the acquiescence. But that's, again, a distinction because it still doesn't render the decision-making by the Regional Director final at the time it's made. Why isn't it final? It's not final until it's made. It's made, and then the parties, if they don't appeal it, then it becomes final at that point in time when that period has run on it. But they have the ability, they possess the ability to challenge that and tee it up to the Board. But what the case handling manual says is that the decision of the Regional Director is final unless the Board grants review. Right. So the minute it's entered, it's final. But the parties have a period of time during which they can challenge it. They can file their request for review, in which case the decision is not final because the Board is going to rule on the request for the review, and it's going to be the Board's decision that's final. Or they can choose to acquiesce to the ruling of the Regional Director, which renders it final. But the difference and the distinction is that at the time, when these parties sat down and the Board and Region 31 sat down, everybody at the table knew that this was going to be a decision from the moment it issued that would be binding as agency precedent, and that's a problem under new process deals. So not necessarily because, and this is going to a little bit of a different issue, but we know that the Board can nonetheless review, at least in certain situations. Yes. So if there's fraud or arbitrary and capriciousness. Yes, that is indeed the case. The Board in its briefing and in its supplemental decision says, actually the Regional Director's decisions aren't final because there's this narrow exception for fraud. We disagree with that assertion. We don't think a narrow exception means that the finality is any way affected because the finality is set forth pretty clearly, and the review for abuse and for fraud is something that's almost never invoked. It's something that I think we described in our brief as a paper tiger. But even setting that aside, I actually think that the fraud and abuse exceptions illustrate the Board's understanding that at the time when parties enter into a consent election agreement and say, we agree to be bound by this, there are certain things that the parties can't anticipate, really odd and unusual things like fraud by a Regional Director, but also that would, in our opinion, encompass something like a loss of quorum by the Board. That's the kind of thing that the parties can't anticipate, and that was covered in this case, this Court's decision in UC Health. The parties can't see the future. Noel Canning wasn't decided until 2014. This happened in 2012. So this is exactly the kind of thing that to the extent the Board recognizes that sometimes it's going to have to change its mind about the finality of Regional Directors' decisions, this is precisely the kind of arena in which they should do so. This affects less than, I think the Board's briefing illustrates less than 5% of cases, but it's an important check and balance on the power of this federal agency to act when it is below the quorum requirements set forth very clearly by Congress. I see my time is expiring. I want to briefly mention the fact that there are also issues with the Board's factual findings in this case. To summarize, and all of this is covered in more detail in our briefing, of course, but to summarize, there are circumstances in which the Board has misapplied their precedent, and there are a number of facts that exist in the record that have not been dealt with or weighed by the Board in any way. This requires either that this case be vacated or that it be remanded to the Board so that it can follow its precedent and acknowledge those facts in the record. Thank you. Good morning, Your Honors. Barbara Sheehy for the National Labor Relations Board. I'll start where the questions were going with opposing counsel. And I do think, Judge Griffith, the very first question was, didn't we decide this in UC Health? And what is the distinction here between a stipulated election agreement that this Court found was a lawful exercise of power even in the laps of a quorum and a consent election? And respectfully, I don't think there has been shown any meaningful distinction. It was the party's agreement and the party's acquiescence and the voluntary nature of what the parties did that really carried the day. So if we already decided in UC Health, then I guess it was just a mistake to remand it in Morristown in this case? I don't know that it was a mistake so much as the Court didn't have before a supplemental decision in order where the Board looked at the processes and came out with a decision that said, this is for us, we've looked at our statute, we've looked at the delegation, we've looked at our rules and regulations, and we don't view this any differently than UC Health, or we don't see UC Health or Laurel Bay presenting a problem. Do you think the Board had within its discretion to reach the opposite conclusion? Do I think the Board had discretion to reach the opposite conclusion in this case? That it could have said that a consent election is different from a stipulated election because in a consent election, we, the Board, have decided that the authority of the Board is invested in the regional director to issue a final decision, and that's not the case in a stipulated election. Certainly, the Board had the discretion to do that. So that, I think, is getting to, is it step one or step two under Chevron, and the Board, I think, has taken the position that this was its interpretation of an otherwise silent statute. So, yes, I think the Board could have done that. Obviously, we know that they didn't, but the Board could certainly have done that. But I think what's also very important here is when there's all these references to the regional director in this type of case stepping in with the full force and effect of the Board, and I think this Court, better than any other circuit court understands this because you see more of our cases, there is a difference in process. Those parts of the case handling manual and that part of the stipulated, I'm sorry, the consent election is referring to the representation case. And as this Court is well aware, a representation case, a certification that issues in a representation case is subject to a secondary attack in an unfair labor practice. So to the extent there's the references to the finality and the references to the full force and effect of the Board, it's referring, I think, in fact, on 37, it says in this case. That's referring to the representation case. And again, respectfully, I think this is also what puts us well within UC Health, is not only do you have the analogous situation of the party's consent and their acquiescence leading to the actual finality of the regional director's representation decision, but you also have very clearly Board review in a secondary case. To the extent the employer is unhappy, even in a consent election situation, if an employer is unhappy with the certification and the results of the certification by the regional director, even after that, they can refuse to bargain. They can refuse to recognize the union. And that unfair labor practice case will remain pending resolution by a full quorum, as this Court said in UC Health. Once a quorum is restored, that case will then be decided. Unless and until then, that employer is not under a final order or obligation to bargain. So there is review. We would not, we'd have to concede, of course, that there was. Are there lots of cases in which that's actually happened? Where there has been review, yes. We cite a few in our briefs. There are older cases, to be sure, and there aren't a lot. But again, so Chelsea Clock, to answer the question, and then I'll perhaps explain why there's not that many. There's Chelsea Clock, Pierre Apartments, I think is another one. Chelsea Clock is one where the Board, the unfair labor practice went to the Board, and the Board found that the regional director acted properly, and they upheld the certification, and the First Circuit reversed and said, no, we actually think, based on what the regional director did in this case, and it had to do, nothing that applies to this case, but had to do with a consolidation of cases for a perfect representation case. The First Circuit said, we think that was an abuse. We think that led to an arbitrary and capricious decision. We're setting aside the certification. So that's a consent election agreement. That was in a consent election, yes. That's the part of the narrow, that's kind of this narrow sliver of cases that can be reviewed, even though it's a consent election agreement. A different kind of review, certainly, and understand that there has been, as Judge Griffith, I think, pointed out during the opposing counsel's time, it's not, this isn't a process that has been foisted on the parties. They get an exchange for their bargain. They have agreed to certain processes where they'll stipulate to the unit, they'll stipulate to the wins and the wears of the election, and in exchange for that, they've gotten something in return. They've gotten, they get certain completion of the process. It happens quickly. So you can understand, also, I think, so not only do we see few consent elections in terms of the number of kinds of elections that the Board handles, but on top of that, I think it's logical to assume that going into that process, acknowledging up front as a party, both parties, waiving all kinds of otherwise objections that you could have, investing the regional director with final authority in the representation case, I think, conveys a certain level of trust, not only in the process, but also among the parties. So I don't think that it's illogical to say that sort of going-in mentality isn't necessarily going to result in a lot of appeals. So not only do you have only a few number, comparatively, consent election cases, you also have a very different mentality among the parties going in that doesn't, in my view, it doesn't logically lend itself to a contentious back-end process for an appeal. So the fact that there aren't a lot of cases out there doesn't mean and doesn't negate the review. And the fact that the review is different because the parties agreed up front that it would be different by the Board, they still can raise all their objections, they still can, of the election itself, they can raise all those, they just raise them to the regional director. So it's not that they've waived the objections post-election, they've certainly waived pre-election issues, but they can still object, the employer here, the hospital, did pose two objections to the conduct of the election to the regional director, he denied those. So it's not that they've waived them entirely, they've waived them before the Board, they've waived them so they'll be final with the regional director in the representation case, and then, in a different set, narrow circumstances, they can continue to take their review to the Board by refusing to bargain or recognize the union. So I do think that my two points mainly are, this is UC health in terms of the acquiescence and the consent of the parties, and on top of that, the issue of finality that is raised under Laurel Bay doesn't exist here in the sense that the Board still has review. So I would encourage the Court to look again at how the Board operates in representation cases versus TESA certification, because it's a unique stance, a unique process that the Board has. And then I can move into the merits, if there are any, since I only have a couple of minutes, I'm happy to answer specific questions on the merits or rest on our brief if there are particular concerns. I think just quickly, if there aren't a lot of concerns, I would just quickly say in response with regards to the contention that the Board has misapplied its precedent or it didn't weigh certain evidence, as we highlight in our brief and emphasize in our brief, the standard of review for the types of findings that the Board may hear, both on bad faith and impasse. This Court and other courts routinely recognize that that's an area of expertise reserved particularly for the Board. So we would argue that under the very deferential standard that the Board properly found here that there was bad faith bargaining and that there was a declaration of impasse on an issue the parties had never even bargained, so therefore impasse was improper. And with respect to the negotiating expenses, I would encourage the Court to look at Fallbrook. All of the questions that were decided by this Court, all of the issues that are raised in the brief, some of them for the first time in the reply are issues that this same employer or the community health systems hospital has raised in Fallbrook, and they were rejected by this Court in Fallbrook. So unless there are any other questions, thank you. And we request full enforcement. Good morning. Good morning. May it please the Court. I'm Nicole Darrow, appearing on behalf of the Intervenor Union California Nurses Association. I have just a couple of comments about the certification issue and then hope to address some of the merits as well. The registered nurses employed by Barstow Community Hospital voted in May of 2012 to be represented by the California Nurses Association. In doing this, they exercised a core statutory right that is absolutely fundamental to the National Labor Relations Act, which has a declared purpose of protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating the terms of their employment. Now, in the nearly six years since the nurses voted for union representation, exercising these highly protected statutory rights, Barstow has never presented any evidence of any problems with the election. They have not produced any evidence of any objectionable conduct by the union, by the union supporters, by any agent of the NLRB. They didn't present evidence of any such conduct to the regional director. As counsel for the board explained, they did not avail themselves of the procedure that is commonly used to challenge certifications of the regional director to get those challenges in front of the board. And beyond that, even when the issue of the union certification was squarely before the full board following this court's remand, Barstow did not state any objections, did not have any reasons to upend the determination of the regional director, even when the validity of the certification was there in front of the full board and open for the board's review. And so after failing or opting not to articulate any objections to the board elections, Barstow now seeks to strip nurses of the rights that they exercised back in May of 2012 when they chose union representation. And they hope to do this based on a theory that is unsupported by the decisions of the board and the decisions of this court in UC Health and SS Mystic as well. I'd like to just briefly address some of the merits issues, the number one being the existence of the labor relations agreement that is alleged by Barstow. The board, the administrative law judge and the board both concluded that there was no agreement to which it might defer. There was no agreement to arbitrate the disputes that were before the ALJ. And that is true. There is undisputed evidence that the labor relations agreement alleged by Barstow, in fact, never came into existence. And without an agreement to arbitrate, there can be no deferral by the board of the bargaining disputes to arbitration. Thank you. Thank you very much. Ms. Cassetta, we'll give you back a couple minutes. Thank you. I'll take just a moment to address the arguments made by counsel for the union. Really, the thrust of the arguments made on the question of the validity of the certification are arguments that were dealt with by this court when it remanded the case in 2016. The question of whether or not the hospital had the right to raise these challenges where it hadn't objected in the underlying proceedings has already been resolved by this court. Moving next to the points made for counsel for the National Labor Relations Board, I, too, would strongly encourage you to take a look at the interplay between representation proceedings and testing of certification proceedings, because it is patently incorrect. The board's assertion is patently incorrect that you can take anything that occurred during the representation proceeding and raise it in the testing of certification proceeding. If you look at the case law, you will see the board hundreds and hundreds of times tell you, if you did not raise this in the representation proceedings, you are foreclosed from raising it during testing of certification. That is, in fact, the thrust of their argument when they appeared before this court in 2015 and said, this party cannot raise these arguments now because they didn't raise them in the representation proceedings. So that's patently incorrect. Second, the question of whether the parties contracted for this, I have two responses to that. First, while the parties did agree to have the regional director's decisions be final and binding, the parties never agreed to allow the board to extend or overreach its congressionally mandated authority. And that's what is happening in this case. And even if the parties could have contemplated that and did do that, this court and the board would never allow that to stand, because there is a congressional mandate that says the board can only act and issue final binding decisions on behalf of the agency when it has a quorum. It didn't, and it issued a final and binding decision. And for that reason, the board's interpretation cannot stand under the first step of the Chevron analysis. Finally, the assertion that this case is UC Health all over again is an explicit denial of the fact that this case was remanded. So the specific facts of this case could be looked at. The situation is different. The consent election agreement is decidedly different from a stipulated election agreement. The board has turned a blind eye to that distinction, a distinction of its own creation, and it cannot be permitted to do so where doing so allows it to extend beyond its congressionally mandated authority. For those reasons, the board's decision needs to be vacated. Thank you. Thank you very much. We thank you for your arguments. They were excellent. The case is submitted.
judges: Griffith, Srinivasan, Wilkins